884 So.2d 568 (2004)
STATE of Louisiana
v.
Michael A. JOHNSON.
No. 2003-K-2993.
Supreme Court of Louisiana.
October 19, 2004.
*569 Charles C. Foti, Jr., Attorney General, Doug Moreau, District Attorney, R. Christopher Nevlis, Assistant District Attorney, Mark A. Dumaine, Assistant District Attorney, Dylan Alge, Assistant District Attorney; Counsel for Applicant.
Louisiana Appellate Project, Prentice L. White, Counsel for Respondent.
WEIMER, Justice.
We granted certiorari in this case to consider the continuing validity of our decision in State ex rel. Mims v. Butler, 601 So.2d 649, 650 (La.1992) (on reh'g), which held that in the absence of a clearly expressed legislative intent, Act 688 of 1982, amending Louisiana's Habitual Offender Law, LSA-R.S. 15:529.1, did not eliminate a sequential requirement for enhanced penalties in the sentencing of multiple offenders.
The correctness of our holding in Mims was first called into question, albeit in dicta, by our decision in State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272, wherein we revealed that, in the course of examining a different aspect of the Habitual Offender Law, legislative material unavailable at the time of the Mims decision had been uncovered. We suggested that the newly discovered legislative material "calls into question the underpinnings of the Mims decision," but declined to expound further on the question because it was not squarely presented by the case before the court. Everett, 00-2998 at 18, 816 So.2d at 1283.
This case brings the issue of the continuing validity of Mims squarely before the court. Defendant, who was sentenced by the district court as a fourth felony offender, argued on appeal that he was improperly adjudicated a fourth felony offender because two of the predicate convictions relied on to enhance his sentence were entered on the same date. Relying on our decision in Mims, the court of *570 appeal held that the two convictions entered on the same date lack the proper sequencing to constitute more than one offense for purposes of LSA-R.S. 15:529.1 and vacated the defendant's habitual offender adjudication and sentence. The State applied to this court for writs, asking that we re-examine our decision in Mims in light of our comments in Everett. We granted the State's application.
After consideration of the additional legislative materials now available, and further study of the issue, we find that our original interpretation of the effect of Act 688 of 1982, amending LSA-R.S. 15:529.1, was incorrect. We hold that the 1982 amendment removed the statute's sequential requirement for enhanced penalties in the sentencing of multiple offenders and legislatively repudiated the rule of law pronounced in State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973).
Based on our interpretation of Louisiana's Habitual Offender Law, we conclude that the district court properly adjudged defendant to be a fourth felony offender because at the time of the commission of the armed robbery for which he now stands convicted, he had earlier been convicted three times (for armed robbery, felony theft, and simple robbery). Accordingly, we reverse the decision of the court of appeal insofar as it vacates the defendant's habitual offender adjudication and sentence, and remand this case to the court of appeal for further proceedings not inconsistent with this opinion. In so doing, we expressly overrule our decision in Mims.

FACTS AND PROCEDURAL HISTORY
Defendant, Michael Anthony Johnson, was charged by bill of information with the armed robbery of a clerk at a Circle K convenience store, a violation of LSA-R.S. 14:64. He pleaded not guilty. After waiving his right to a jury trial, the defendant was found guilty as charged following a bench trial. The State then filed a bill of information seeking to establish habitual offender status. The State asserted that defendant was a fourth felony offender based upon the following:
1) a June 8, 1982 arrest for armed robbery resulting in a conviction on November 15, 1982, for which defendant received a sentence of twenty years at hard labor;
2) a January 4, 1993 arrest for felony theft auto occurring on December 23, 1992, to which defendant pleaded guilty as charged on August 16, 1993, receiving a sentence of two years at hard labor;
3) a January 4, 1993 arrest for attempted first degree robbery occurring on December 27, 1992, to which defendant pleaded guilty to a reduced charge of simple robbery on August 16, 1993, receiving a sentence of five years at hard labor to run concurrently with the felony theft conviction; and
4) the April 24, 2002 armed robbery conviction for which sentence enhancement was being sought.
At the hearing conducted to determine defendant's habitual offender status, the State presented the testimony of a criminal identification specialist who matched defendant's fingerprints to the arrest cards for his three prior convictions. The State also introduced bills of information and court minutes documenting defendant's three prior convictions. Finally, the State asked the district court to take judicial notice of the defendant's current conviction for armed robbery.
For his part, the defendant did not contest the 1982 armed robbery conviction, the 1993 felony theft conviction, or the current armed robbery conviction. Rather, *571 the defendant argued that the district court could not use the 1993 simple robbery conviction to enhance his sentence because (1) it was entered on the same day as the felony theft conviction and (2) it was not the defendant's conviction and sentence but that of another Michael Anthony Johnson.
After reviewing the evidence and testimony, the district court rejected the defendant's arguments and adjudged him a fourth felony offender. As such, defendant was sentenced to life imprisonment, without benefit of parole, probation, or suspension of sentence. Defendant appealed his conviction and habitual offender adjudication.
The court of appeal affirmed the conviction, but vacated the habitual offender sentence, finding that the State's proof did not suffice to demonstrate defendant's status as a fourth offender because two of his predicate convictions had been entered on the same date. State v. Johnson, 855 So.2d 437, 03-0127 (La.App. 1 Cir. 9/26/03), unpublished. More particularly, the court noted that defendant pleaded guilty on August 16, 1993, to both a felony theft charge based on an incident which occurred on December 23, 1992, and to simple robbery based on an incident which occurred a few days later, on December 27, 1992. Relying on this court's decision in Mims,[1] the court of appeal held that the two convictions entered on the same date lack the proper sequencing (commission of a crime, followed by conviction, then commission of another crime, followed by conviction and so forth) to constitute more than one offense for purposes of LSA-R.S. 15:529.1. The court vacated the defendant's habitual offender adjudication and sentence and remanded the case to the district court with instructions for the State, should it elect to file a new, third felony habitual offender bill, to select which predicate felony (felony theft or simple robbery) it wishes to use, as both cannot be utilized to enhance the defendant's sentence.
Given our dicta in Everett, we granted the State's application for writs to revisit our holding in Mims that multiple convictions entered on the same day must be treated as a single predicate under the habitual offender law, even when the convictions stem from separate and distinct criminal episodes. State v. Johnson, 03-2993 (La.5/21/04), 874 So.2d 159.

LAW AND ANALYSIS
The Habitual Offender Law, LSA-R.S. 15:529.1, provides, in relevant part:
A. (1) Any person who, after having been convicted within this state of a felony ... or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(b) If the third felony is such that....
(c) If the fourth or subsequent felony is such that....

*572 B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
Prior to 1956, the statute did not include section B. It did, however, include the contents of section A. In State v. Clague, 224 La. 27, 68 So.2d 746 (1953) and State v. Williams, 226 La. 862, 77 So.2d 515 (1955), we were called upon to determine whether the statute, as written, imposed a sequential requirement such that there must be the commission of a crime, followed by conviction, then commission of another crime, followed by conviction and so forth in order for a prior conviction to qualify as a predicate offense for purposes of sentence enhancement under the habitual offender statute. In other words, we were asked to determine whether multiple convictions entered on the same day must be treated as a single predicate for purposes of the habitual offender law. In both decisions, the court held that the statute is clear and unambiguous and susceptible of only one construction: it does not impose a sequential requirement on the prior convictions. More precisely, we observed:
We do not think that it is necessary for the defendant to have been charged as a double offender in order that he might be charged as a triple offender. What is mandatory is that he has been tried and convicted of two previous offenses.
....
The punishment is for the third crime, and it is heavier because the accused has become an habitual offender. The defendant becomes a third offender at the time he commits the third crime, and the punishment is incurred at that time.
State v. Williams, 77 So.2d at 516, quoting State v. Clague, 68 So.2d at 747 (citations omitted). In so holding, the court rejected Williams' argument that "under multiple offender legislation, which is directed at recidivism, `The increased penalties for habitual offenders are not intended to follow according to a numerical count of the offender's crimes, but are imposed for his successive failures to rehabilitate himself,'" Williams, 77 So.2d at 516, suggesting that such arguments, which find no support in the precise language of the statute, are more appropriately addressed to the legislature. Id.
Apparently, this court's comments in Williams did not fall on deaf ears, as the next year the legislature passed Act 312 of 1956, which engrafted a paragraph onto section 529.1. This new paragraph provided:
It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as, and adjudged to be, a third offender, or that an offender have been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender, whether or not he was adjudged to be a second offender in the prior instance; *573 and that one shall be deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender, whether or not he was adjudged to be a third offender in the prior instance. [Emphasis added.]
The amendment was considered to be a "legislative repudiation of the Williams case." State ex rel. Jackson v. Henderson, 283 So.2d 210, 212 (La.1973) (quoting Bennett, Criminal Law and Procedure, 17 La.L.Rev. 60-61 (1956)). As a consequence of the amendment, the jurisprudence interpreting section 529.1 between 1956 and 1982 consistently recognized that section B of the statute imposed a specific sequential requirement for sentence enhancement and, thus, "consistently held that under the Habitual Offender Law, second offender status could only result from an offense committed after a first conviction, and third offender status after a conviction which would have qualified as a second offender conviction, and so on." Mims, 601 So.2d at 652.
In 1982, the legislature effected another major change in the Habitual Offender Law.[2] In that year, with the passage of Act 688 of 1982, the legislature deleted the second sentence of section B, leaving that section in the form in which it appears today. In Mims, this court was asked to determine the effect of that legislative action on the sequential requirement that had been imposed through the past "nineteen years of jurisprudence." Mims, 601 So.2d at 650. In other words, the court was asked to determine whether the legislature's deletion of the second sentence of section B reflected an intent to return multiple offender sentencing to the pre-1956 era where, according to Williams, no sequential requirement existed and any number of felonies committed are counted separately for sentence enhancement, even if all are committed prior to a conviction.
The facts in Mims are strikingly similar to those presented in this case. The defendant, Ira Joe Mims, was convicted on November 28, 1978, of two felonies arising from independent criminal conduct occurring on separate dates. Thereafter, on January 12, 1985, he committed the crimes of second degree battery and pursesnatching. He was subsequently convicted of both crimes and sentenced as a third felony offender for the purse snatching offense. In an application for post-conviction relief, Mims argued that his sentence as a third offender was improper because his two predicate convictions occurred on the same day.
On original hearing in Mims, we held that Act 688 of 1982 legislatively overruled the sequential requirement rule of State ex rel. Jackson v. Henderson, supra, and as a result, Mims was properly sentenced as a third offender. Thereafter, a sharply divided court granted rehearing and reversed itself. The court held that the sequential requirement for enhanced penalties in the sentencing of multiple offenders survived the 1982 amendment of section 529.1. Mims, 601 So.2d at 650.
The holding on rehearing was ultimately premised on a perceived ambiguity in the intent of the legislature in passing Act 688 of 1982. The Mims court opined that "[i]f the Legislature intended to change the law so as to permit enhancing punishment for subsequent crimes by simply adding up the number of prior crimes committed, *574 they did a poor job." Mims, 601 So.2d at 654. The court's criticism of the legislative effort was prompted by two considerations. First, the court noted that while the sequencing requirement was deleted from section B, no changes were made to section A, which continues to retain the requirement that the defendant commit his or her second offense after conviction of a first felony offense. Second, the court expressed concern with the title of the act, finding that it "is less than revealing if it were meant to reflect an intent to change the law," and voiced frustration over the inability of counsel and the court to locate any committee or floor debate materials that might shed light on the legislative intent. Mims, 601 So.2d at 654-655. Comparing Act 688 of 1982 to Act 682 of 1978, which amended the provisions of LSA-R.S. 14:98, the DWI statute, to provide that a person can be convicted for a second, third, or fourth offense DWI regardless of whether the arrest for the second, third, or fourth offense occurred before or after conviction of the earlier offense, the court concluded that the sequencing requirement of section 529.1, recognized in State ex rel. Jackson v. Henderson, supra, survived the 1982 amendment because the legislature failed to give crystal clear guidance of its intent to change the law, as it did when it amended the DWI provisions.
"Without the benefit of any clear indication of the Legislature's intent during the 1982 session," the Mims court ultimately turned to "generally accepted methods of statutory interpretation" to determine the effect of Act 688 on the jurisprudentially sanctioned sequencing requirement. Mims, 601 So.2d at 655. Applying the rule of strict statutory construction and the doctrine of lenity, the court held that the sequencing requirement survived the amendment and that because Mims' two prior convictions had been entered on the same day, he could only be treated as a second offender upon commission of a subsequent felony.
Mims remained the controlling rule for ten years, until this court revisited the Habitual Offender Law in State v. Everett, supra. In that case, in the course of examining a different section of the Habitual Offender Law, legislative material was uncovered that had not been available at the time Mims was decided.
[T]he Mims court relied on generally accepted methods of statutory interpretation because the court was unable to locate committee or floor debate materials in order to discern the legislative intent behind the amendment more precisely. In conducting research for the instant opinion, however, the minutes of the house committee meeting in which the amendment was discussed were located. These minutes call into question the court's interpretation of the 1982 amendment. The minutes reflect that the bill was one of a package of bills proposed by the Louisiana District Attorney's Association and dealt with "the determination of habitual offenders and time of commission and conviction of offenses." Minutes of the House Committee on Administration of Criminal Justice, June 9, 1982, p. 2. Moreover, the minutes report that the bill was explained as follows:
[U]nder the old law it was necessary to have a commission of a crime, a conviction, etc., in that order but under the proposed bill certain language would be removed allowing for simpler conviction of multiple offenders.

Id. It therefore appears the bill was intended to expand the application of the Habitual Offender Law. Because we are not directly presented with the issue of whether subsection (B) should continue *575 to be interpreted as incorporating a sequential requirement for enhanced penalties in the sentencing of multiple offenders, we will not expound further on this question. Suffice it to say that this new information calls into question the underpinnings of the Mims decision.
Everett, 00-2998, at 17-18, 816 So.2d at 1282-1283.
Given the legislative material uncovered in Everett that was not available at the time Mims was decided, and the ramifications of that material on the finding on which the Mims decision was premised that the legislative intent behind Act 688 of 1982 was ambiguous and "less than revealing"we believe that it is appropriate to revisit the decision in Mims and once again consider the impact of Act 688 of 1982, amending LSA-R.S. 15:529.1, on the sequential requirement for enhanced penalties in the sentencing of multiple offenders.
We begin our analysis with the proposition that the starting point in the interpretation of any statute is the language of the statute itself. Theriot v. Midland Risk Insurance Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). As the provisions of the Revised Statutes instruct: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. This instruction is mirrored in the provisions of our Criminal Code, and in the Civil Code. See, LSA-R.S. 14:3 ("The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."); LSA-C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.").
As we have often noted, the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. Theriot, 95-2895 at 3, 694 So.2d at 186; Touchard, 617 So.2d at 888. "Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute." Theriot, 95-2895 at 3, 694 So.2d at 186. What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800. However, in many cases, the legislative history of an act and contemporaneous circumstances may be helpful guides in ascertaining legislative intent. Exxon Pipeline Company v. Louisiana Public Service Commission, 98-1737, 98-1738, p. 8 (La.3/2/99), 728 So.2d 855, 860.
In addressing the effect of Act 688 of 1982 in the Mims opinion, the foregoing precepts were generally followed. However, upon re-examination of that opinion, we believe that the analysis was ultimately flawed and deviated from well-established rules of statutory interpretation.
As noted above, Act 688 of 1982 deleted from section B of LSA-R.S. 15:529.1 the language that imposed an explicit sequential requirement for sentence enhancement under the habitual offender statute. Prior to the amendment, the sequential requirement *576 in section 529.1 was plain, unambiguous, and explicit. Section B provided:
It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender, whether or not he was adjudged to be a second offender in the prior instance; and that one shall be deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender, whether or not he was adjudged to be a third offender in the prior instance. [Emphasis added.]
Following the amendment, section B states:
It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender have been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
This language is simple and straightforward; it mentions nothing about a sequential requirement.
In Mims, it was acknowledged that the precise language deleted by Act 688 had been engrafted onto the statute in order to legislatively alter the holding in Williams that the statute did not contain a sequential requirement. Mims, 601 So.2d at 652. Nevertheless, the Mims court refused to hold that the deletion returned the law to the state in which it appeared under Williams, holding instead that the legislative intent as to the "overall effect" of the amendment was "ambiguous" because section A remained unchanged, and section A "continues to establish a multiple offender status only for a person committing a (subsequent) felony after having been convicted of a felony." Mims, 601 So.2d at 653. However, the language in section A was in the statute when the court considered, and held, in Williams that there was no sequential requirement in the habitual offender statute. Contrary to the court's suggestion in Mims, a plain reading of section A reveals that it requires no more than that the subsequent felony be committed after the predicate convictions. It does not create ambiguity, nor does it impose a specific sequence requirement for the predicate convictions. It provides only that subsequent felonies committed after a conviction expose one to being adjudicated and sentenced as a habitual offender.
In finding ambiguity in the legislative intent behind Act 688, the Mims court failed to accord proper significance to several important rules of statutory construction. First, those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, and with knowledge of the effect of their acts and a *577 purpose in view. Theriot, 95-2895 at 3-4, 694 So.2d at 186-187; State v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, 94-1914, p. 17 (La.5/22/95), 655 So.2d 292, 301 n. 10. Second, when the legislature changes the wording of a statute, it is presumed to have intended a change in the law. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 17 (La.6/29/01), 808 So.2d 294, 305 ("`[W]here a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law.'") (quoting Brown v. Texas-LACartage, Inc., 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889); Louisiana Civil Service League v. Forbes, 258 La. 390, 414, 246 So.2d 800, 809 (La.1971) ("[T]he Legislature is presumed to have enacted a statute in light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law.").
The opinion in Mims does not apply either of these well-settled rules of statutory construction. To the contrary, instead of applying the rule that when a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law, a reverse presumption was created, holding that if the legislature intended to overturn years of jurisprudence, it had a duty to state that intent affirmatively and in a "crystal clear manner." Mims, 601 So.2d at 654. The fact that the legislature could have done a better job in drafting, and failed to, does not permit the court to abandon long-established tools of statutory construction, of which the legislature is clearly presumed to be aware. Theriot, 95-2895 at 3-4, 694 So.2d at 186-187.
The holding in Mims that Act 688 of 1982 did not eliminate a sequential requirement for enhanced penalties in the sentencing of multiple offenders does not give adequate weight to the legislative history of section 529.1 and does not give proper effect to the amendment. Prior to 1956, the statute did not include a sequential requirement, and the jurisprudence interpreting the statute so held. State v. Williams, supra; State v. Clague, supra. In 1956, presumably in response to Williams, the legislature acted to amend the statute to include a clearly delineated sequential requirement. That sequential requirement remained in place for twenty-six years when, in 1982, the legislature amended section 529.1 to delete the language that had been inserted in response to Williams. Clearly, we can presume that by changing the wording of section 529.1 to delete the language setting forth the sequential requirement, (1) the legislature was aware of the interpretation that had been given the language of section B by the jurisprudence (in particular by State ex rel. Jackson v. Henderson, supra) and (2) it intended to change the law. New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223, p. 11-12 (La.4/10/95), 653 So.2d 538, 544.
While the presumption we apply is not conclusive, and can be challenged, in this instance it is buttressed by the legislative material that has subsequently become available. As explained in Everett, the minutes of the house committee meeting in which the amendment was discussed were located. Also located were the minutes of the senate committee meeting. Both sets of minutes underscore our conclusion that the legislature intended to remove the sequential requirement and expand the application of the habitual offender law. In particular, the minutes from the Senate Committee on Judiciary B are most enlightening. They report:

*578 Senator Barham introduced this bill and Pete Adams, representing the Louisiana District Attorney's Association, presented the bill which provides for time limitations for use of convictions for habitual offender purposes. It states that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. It erases the present necessary crime conviction sequence to determine a criminal as a habitual offender. [Emphasis added.]
Minutes of the Senate Committee on Judiciary B, July 6, 1982, p. 6. While we recognize that as a general proposition, comments made during one committee meeting are not evidence of the intent of the legislature as a whole, Cacamo v. Liberty Mutual Fire Insurance Co., 99-3479, 99-3480, 99-3481, p. 9 (La.6/30/00), 764 So.2d 41, 47, as respects those parts of a bill passed as introduced by a standing committee without change, it is reasonable to assume that the legislature adopted the intent of the committee. 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION, § 48:06, p. 441 (6th ed.2000). The minutes of the Senate Standing Committee on Judiciary B and the House Committee on Administration of Criminal Justice clearly reflect that the amendment of section 529.1 effected through Act 688 of 1982 was not intended as a mere "housekeeping" measure, as we suggested in Mims. Rather, the amendment was intended to expand the application of the habitual offender law by removing the sequential requirement.
Furthermore, although not a part of the final enrolled act, the Digest of House Bill 543 also states that the purpose of the amendment was to delete the sequence requirement in the habitual offender law.[3]
The legislative material uncovered in Everett dispels any ambiguity the Mims court found in the intent of the legislature in enacting Act 688 of 1982. With the passage of Act 688, the legislature removed the sequential conviction requirement that had previously been imposed in section B of the statute.
We therefore hold today that the habitual offender statute, LSA-R.S. 15:529.1, as it appears post-amendment, is clear and unambiguous. There is no statutory bar to applying the law in sentencing for more than one conviction obtained on the same date based on unrelated conduct. The statute simply does not contain a sequential conviction requirement. Rather, the only requirement in the statute is one which has been imposed from the inception: for sentence enhancement purposes, the subsequent felony must be committed after the predicate conviction or convictions. See, LSA-R.S. 15:529.1(A) ("Any *579 person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony.").
Such a construction of the statute is entirely consistent with the language and the purpose of the law, which is to deter and punish recidivism. State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677. An accused becomes a recidivist at the time of the commission of the subsequent crime, whether or not he has previously been exposed to sentencing as a habitual offender.

CONCLUSION
With the passage of Act 688 of 1982, the legislature deleted the sequential conviction requirement from the habitual offender law. The Act legislatively repudiated State ex rel Jackson v. Henderson, supra, and removed any statutory bar to sentencing defendant as a fourth felony offender under section 529.1. Our holding to the contrary in Mims, which was based on an incomplete legislative record, is expressly overruled.
At the time he committed the armed robbery of which he most recently stands convicted, defendant had previously been convicted of three separate felonies, although two of the convictions had been entered on the same date.[4] On those grounds, the district court properly adjudged defendant to be a fourth felony offender. The judgment of the court of appeal, insofar as it vacates the defendant's habitual offender adjudication and sentence, is therefore reversed. This case is remanded to the court of appeal for further proceedings not inconsistent with this opinion.[5]
COURT OF APPEAL JUDGMENT REVERSED; CASE REMANDED TO COURT OF APPEAL.
CALOGERO, C.J., dissents and assigns reasons.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, dissents and assigns reasons.
I respectfully dissent from the majority opinion holding that the 1982 amendment to La.Rev.Stat. 15:529.1 removed the statute's sequential requirement for enhanced penalties in the sentencing of multiple offenders and that this amendment legislatively repudiated the rule of law pronounced in State ex. rel. Jackson v. Henderson, 283 So.2d 210 (La.1973). Even in hindsight, with the belated discovery of legislative committee hearing minutes, I see no compelling reason to upset jurisprudence that has been settled for over thirty years, especially given that we reaffirmed the law in 1992 in State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992) (on rehearing), and the legislature has not in the twelve years since then deemed our interpretation of the statute as requiring legislative action.
As can be seen even by the history of the statute before us, the legislature is not hesitant to act if it believes this court has interpreted a statute contrary to the legislative *580 intendment. Less than one year after our decision in State v. Williams, 226 La. 862, 77 So.2d 515 (1955), the legislature by Act No. 312 of 1956 added the second sentence of La.Rev.Stat. 15:529.1(B) to require that in order for one to be considered a third offender, the third offense must have been committed after the conviction which caused him to be a second offender, and the fourth offender is one who commits a felony after the conviction which caused him to be a third offender. Jackson, 283 So.2d at 212. In Jackson, we found the 1956 legislative repudiation of our decision in Williams to be clear and unambiguous.
That the Williams decision was an anomaly is indicated by more than the alacrity with which the legislature acted to repudiate it. The 1928 version of Louisiana's habitual offender law provided that "[a]ny person, who, after having been three times convicted within this State, of felonies ... then commits a felony within this State, shall be sentenced, upon conviction of such fourth, or subsequent offense, to imprisonment in a state prison for the term of his natural life." 1928 La. Acts 61, §§ 2 (emphasis added). In response to an inquiry whether three convictions on the same day would render the defendant a fourth offender under the 1928 law upon commission of a subsequent offense, the Attorney General's Office issued an opinion stating that "it appears to have been the intention of the law that the second and subsequent offenses should have been committed after conviction or sentence on one or more of the other offenses committed by the person against whom the habitual criminal penalty is sought." Attorney General Opinion 1938-40, p. 154, 155-56. In 1942, the legislature changed the wording and format of the statute,[1] but what has not changed in nearly 80 years has been the sequential requirement that the defendant commit his second offense after conviction of his first felony offense. See 1928 La. Acts 15, §§ 1 ("[A]ny person, who, after having been convicted of ... a felony commits any felony ... upon conviction of such second offense, shall be punished as follows...."); 1942 La. Acts 45, §§ 1 ("[A]ny person who, after having been convicted of ... a felony, commits any felony within this state, upon conviction of such felony, shall be punished as follows...."); 1956 La. Acts 312, §§ 1 ([A]ny person who, after having been convicted.... [of a felony] thereafter commits any subsequent felony...."). In my view, the sequential rule we reaffirmed in Mims has been in effect in Louisiana since 1928, interrupted only once, by Williams, and then for less than a year before the legislature acted to reject the decision's interpretation of the statute and write the rule explicitly into the statute.[2]
As to the import of the 1982 legislation, passed some nine years after our decision in Jackson, a majority of this court addressed that legislation in the Mims case and determined, rightly in my view, that *581 the amended statutory language was not clear and unambiguous. I do not subscribe to this majority's determination that the majority in Mims misapplied the rules of statutory construction and failed to give sufficient weight to the removal of the language in La.Rev.Stat. 15:529.1(B). Despite the language from the committee hearings now cited by the majority here, whether the legislature intended to change the law is not as clear as the majority opines. Because the legislature used asterisks to offset the changes made by 1982 La. Acts 688 to R.S. 15:529.1(B), as opposed to the current (vastly improved) style that employs strike-throughs in existing language to indicate deletions,[3]Mims in my view reasonably concluded that the effect of the 1982 act was ambiguous as to the overall impact of the amending act.
The Mims court's conclusion that the legislature could have done a better job in amending the statute in 1982 had it wanted to eliminate the sequential requirement pronounced nine years earlier in Jackson holds true today, regardless of the committee hearing minutes. For example, the legislature just four years earlier in 1978 immediately reacted to the court's decision in State v. Neal, 347 So.2d 1139 (La.1977)(sequence requirement applies to habitual offender D.W.I. prosecutions) by adding an express proviso to the habitual offender provisions of the D.W.I. law stating that "[o]n a second conviction, regardless of whether the second offense occurred before or after the first conviction, the offender shall...." La.Rev.Stat. 14:98(C)(1); 1978 La. Acts 682; see also La.Rev.Stat. 14:98(D)(1)(a)(third offense); La.Rev.Stat. 14:98(E)(1)(a)(fourth and subsequent offense).
Although this Court decided Mims over twelve years ago, the legislature has not responded to the decision, in sharp contrast to its immediate response to Williams. Furthermore, the legislature, notably, also did not act when this court in State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272, questioned the viability of the Mims decision. As we recognized in Mims, a general rule of statutory construction *582 holds that when the legislature changes the wording of a statute it is presumed to have intended a change in the law; however, the question today remains as pertinent as it was in Mims, and perhaps even more so in light of legislative inaction over the past twelve years, as to what the legislature intended in 1982 La. Acts No. 688. That the legislature has retained an explicit sequence requirement for a qualifying second offense, has failed to disavow Mims since it was decided over twelve years ago, and has recently made significant ameliorative changes in the habitual offender law with regard to the sentencing of third and fourth felony offenders,[4] the rules of construction we reasonably applied in Mims dictates retaining the sequential requirement that has been the law of Louisiana for at least three decades.
NOTES
[1] While the court of appeal recognized Mims to be the controlling law, it did note in a footnote that this court had "questioned the wisdom of its holding in Mims" in Everett.
[2] Amendments in 1958 (Acts 1958, No. 469 § 1), 1978 (Acts 1978, No. 424 § 1) and 1979 (Acts 1979, No. 199 § 1) did not affect those provisions of the statute at issue in this case and, therefore, need not be addressed here.
[3] The Digest of Reengrossed House Bill No. 543 states:

Proposed law deletes present law provisions that the offender shall be deemed a second offender only if the crime resulting in the second conviction was committed after his first conviction; and that a person shall be deemed a third offender only if the crime resulting in the third conviction was committed after his conviction for a crime which in fact caused him to be a second offender, whether or not he was adjudged a second offender in the prior instance; and that a person shall be deemed a fourth offender only if the crime resulting in the fourth conviction was committed after his conviction for a crime which in fact caused him to be third offender, whether or not he was adjudged a third offender in the prior instance.
Reengrossed H.R. 543, 1982 Leg., Reg. Sess. (La.1982).
[4] It is clear from the record that the convictions entered on the same date arose from separate and distinct events, occurring on different dates, and not as part of a single criminal episode.
[5] Specifically, the court of appeal is to address the issue raised by defendant on appeal that was pretermitted given the finding of the appellate court that defendant could not be sentenced as a fourth felony offender because two of his predicate convictions had been entered on the same date. That issue involves defendant's claim that one of the predicate convictions was not actually his, but that of another individual named Michael Anthony Johnson.
[1] At stake in Williams was 1942 La. Acts 45, §§ 1(3), which provided that "[i]f the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then such person must be sentenced to imprisonment for such fourth subsequent felony for a determinate term not less than the longest term prescribed for a first conviction and not more than his natural life and in no case less than twenty-years."
[2] By contrast, the original version of Louisiana's general habitual offender law did not include a sequence requirement for any level of offender. See 1855 La. Acts 120, §§ 118 ("[T]he Judge shall have the power to sentence any person who may be convicted for a second or third offence to double and triple the penalty imposed by law, and for a fourth offence, the person so convicted may be sentenced to perpetual imprisonment.")
[3] 1982 La. Act 688 reads as follows:

Section 1. R.S. 15:529.1(B) is hereby amended and reenacted to read as follows:
§§ 529.1 Sentences for second and subsequent offenses; certificate of warden or clerk of court in the state of Louisiana as evidence
* * * *
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or than an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
* * * *
The Digest of House Bill 109, although not a part of the final enrolled act, states expressly that the purpose of the amendment was to delete the sequence requirement in subsection (B). However, the title of the act contains no such direct expression of intent and the face of the act with its use of offsetting asterisks leaves it uncertain whether the second sentence of subsection (B) was deleted or left unchanged, just as the legislature left subsection (A) unchanged, although it too contained an explicit sequence requirement for a qualifying second offense.
The legislature appears to have recognized the confusion that may arise from the use of off-setting asterisks to serve multiple purposes. In 1997, the legislature began using strike-throughs in existing language to indicate deletions from existing law, and beginning in 1998, the published volumes of legislative acts include an explanatory preface indicating that "Words in struck through type are deletions from existing law; and words underscored are additions." The use of struck-through language to indicate deletions from existing statutory language serves the salutary purpose of removing the kind of ambiguity that surrounds the 1982 amendment of La.Rev.Stat. 15:5291.(B).
[4] By 2001 La. Acts 403, the legislature amended La.Rev.Stat. 15:529.1(A)(1)(b)(ii) and (c)(ii) to provide that only a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than ten years, as opposed to five years, could serve as a predicate conviction.