DREW, J.
11 John Vincent Spano was convicted as charged of second degree battery for striking his attorney in court and rendering him unconscious. Adjudicated as a fourth felony habitual offender, Spano was sentenced to life imprisonment without benefits. The defendant appealed his conviction, adjudication, and sentence. We affirm his conviction but vacate his adjudication and sentence as a fourth felony habitual offender. This matter is remanded for further proceedings.
FACTS
On July 12, 2004, Spano was in court for his petit jury trial in another matter, along with his court-appointed Indigent Defender Board attorney, Ricky Swift. Prior to announcing ready to begin the jury trial and at the defendant’s request, Swift urged several motions for continuance. *306 After the trial court refused to continue Spano’s trial, Swift stated that the defendant was ready to proceed and began to prepare his notes for trial. The defendant stood up and addressed the court that his family had hired another attorney. The court indicated that the defendant could hire another attorney, but that the ease would proceed to jury trial. Following a bench conference, Swift returned to his chair and gathered his notes. The defendant again stood up, then struck Swift a severe blow on his head.
Assistant District Attorneys Brady O’Callahan and Dhu Thompson saw the defendant hit Swift. According to the witnesses, Spano reached his hand back and struck Swift, using the full force of his body. Spano used profanity and said something like, “you’re trying to get me a life sentence” or “you’re not going to get me a life sentence.” The blow knocked Swift | gforward, then out of his chair and onto the floor. O’Callahan rendered first aid by applying pressure from his hand onto Swift’s head wound in an attempt to stop the flow of blood. He observed a huge bloodstain on the floor and that Swift had both eyes closed and was unresponsive. After a couple of minutes, the courtroom was cleared and secured, but Swift still did not move or respond. O’Callahan stated that it took “a while” to awaken Swift. Thompson and Deputy Saundra Lefall corroborated this account of the crime, both noting that Swift’s eyes were closed and he was unresponsive to physical touching and shaking.
Swift recalls:
1. the defendant saying something about him not representing the defendant correctly;
2. being on the floor as he bled profusely from his left eye area;
3. being treated at a hospital, where he received several sutures to close the head wound;
4. that his eye was painful, bruised, and swollen for a couple of weeks; and
5. that he received follow-up medical treatment to check for a possible blood clot and damage to his vision.
As a result of this incident, the defendant was charged by bill of information with one count of second degree battery, for which crime another petit jury convicted him. Thereafter, the state filed a fourth felony habitual offender bill. The adjudication hearing, adjudication, and sentencing all took place on September 22, 2005. At the beginning of that hearing, the defense made a motion for new trial based in part on the fact that the defendant wore his prison armband throughout the trial. It was | ?,argued that this prejudiced the jury against him. The motion for new trial was denied.
During the habitual offender proceeding, the state presented the following evidence:
• Proof of guilty plea actually taken on April 15, 1996, to an October 18, 1995, aggravated battery (Docket # 176,206 of the First JDC), relative to which Exhibit S-l contains minutes and transcript;
• Proof of guilty plea taken on April 15, 1996, to cruelty to juveniles committed on July 8, 1995, (Docket # 176,681 of the First JDC), as reflected by Exhibit S-2, containing minutes and transcript;
• Proof of guilty plea taken on February 25, 1998, to simple burglary committed on August 29, 1997 (Docket # 189,413 of the First JDC), as reflected by Exhibit S-3, which contains minutes and transcript;
*307 • A request that the court take judicial notice of the instant offense, second degree battery, committed July 12, 2004, with conviction by a jury on July 12, 2005 (Docket # 236,880 of the First JDC); and
• Fingerprints of the defendant taken in court (Exhibit S — 4).
After examining the fingerprints on the back of the bills of information from the predicate offenses and comparing them to the defendant’s fingerprints taken in court, the state’s fingerprint expert determined that all fingerprints were taken from the defendant. After presentation of the state’s evidence, defendant raised a question regarding the ten-year cleansing period and the first conviction, which argument was rebutted by the state. The trial court concluded that the state was correct in its argument regarding the cleansing period, and defense counsel stated that it had no further arguments. No objection was made to the use of both convictions obtained on the same day as separate convictions for sentencing enhancement purposes. The trial court subsequently found the defendant topbe a fourth felony habitual offender, sentencing him to serve the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant’s timely-filed motion to reconsider sentence was denied.
DISCUSSION

Sufficiency of Evidence

The defense argued that the state failed to meet its burden of presenting evidence sufficient to find the defendant guilty of second degree battery because it failed to present medical evidence that the victim became unconscious, the one element of “serious bodily injury” most relevant to this prosecution. Defendant (incorrectly) also contended in brief that the assistant district attorney testified that Swift was unresponsive “for an instant,” and that no other testimony was in the record, leaving open a possible claim that the unresponsiveness was merely from the initial shock of the blow. Defendant further speciously argued that the state failed to prove intent.
The law on sufficiency is clear.[1] La. R.S. 14:34.1 defines second |5degree bat *308 tery as a battery committed without the consent of the victim when the offender intentionally inflicts “serious bodily injury,” listing five possible situations, proof of any one of which is sufficient to prove serious bodily injury:
• unconsciousness;
• extreme physical pain;
• protracted and obvious disfigurement;
• protracted loss or impairment of the function of a body member, organ, or mental faculty; or
• a substantial risk of death.
The offense of second degree battery requires additional proof that the offender had the specific intent to inflict “serious bodily harm.” State v. Welch, 92-1866 (La.2/22/93), 615 So.2d 300. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).
Lin order to prove a second degree battery, the state had to prove that the defendant: (1) committed a battery upon the victim, (2) without the victim’s consent, and (3) intentionally inflicted serious bodily injury. State v. Young, 00-1437 (La.11/28/01), 800 So.2d 847. The testimony of a victim or a witness may present sufficient evidence of the element of a battery of whether a victim sustained serious bodily injuries, without any testimony of experts. State v. Hall, 03-1384 (La. App. 5th Cir.3/30/04), 871 So.2d 558.
When viewed in the light most favorable to the prosecution, the evidence was sufficient for any rational trier of fact to find the essential elements of the crime of second degree battery proven beyond a reasonable doubt. Furthermore, the testimony regarding the defendant’s exclamation about getting a life sentence was sufficient to support the finding of specific criminal intent because it indicated that he actively desired the prescribed criminal consequences to follow his act. See La. R.S. 14:10(1).

Adjudication as a Fourth Habitual Offender

CHRONOLOGY

1992 State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992): convictions on the same day are to be counted as one conviction.
07/08/95 #176,681: Spano committed cruelty to a juvenile under 17 years.
07/20/95 #176,206: Spano committed aggravated battery on Jeremy Dorough.
04/15/96 #176,206: Spano pleaded to aggravated battery.
04/15/96 #176,681: Spano pleaded to cruelty to juvenile.
(NOTE: different conducts pleaded on same day).
1708/29/97 #189,913: Spano committed simple burglary.
02/25/98 #189,413: Spano pleaded guilty to simple burglary.
07/12/04 Spano knocked out IDB lawyer.
10/19/04 State v. Johnson, 2003-2993 (La.10/19/04), 884 So.2d 568: overruled Mims; convictions count individually even though guilty pleas were on the same day-PROVIDED same-day CONVICTIONS are BASED UPON UNRELATED CONDUCT, NOT A SINGLE COURSE OF ACTION.
07/12/05 Spano convicted of 2d degree battery.
*309 07/14/05 4th felony offender bill filed.
08/15/05 The Louisiana Legislature essentially overruled State v. Johnson, supra, by providing that multiple convictions obtained on the same day prior to 10/19/04 (Johnson decision) count as one conviction.
09/22/05 Spano adjudicated as 4th felony offender.
Spano claimed:
• his counsel was ineffective by not objecting to the habitual offender bill;
• the provisions of La. R.S. 15:529.1(A)(l)(e)(ii) were not met because two prior offenses were not crimes of violence;
• the predicate offenses in this case do not expose the defendant to a mandatory term of life imprisonment; and
• the appropriate sentencing term here is 20 years to life under La. R.S. 15:529.1(A)(l)(c)(i).
Defendant concedes in brief that the two predicate felonies taken by guilty pleas entered on the same day should be counted as two predicate offenses, citing State v. Johnson, supra. The state contradictorily:
• first notes in brief that the defendant is only a third felony habitual offender, not a fourth, based on recent legislation providing that multiple convictions obtained on the same date prior to October 19, 2004, shall be counted as one; but then
|s« notes at the end of its brief, that the defendant is a fourth offender, because multiple convictions obtained on the same date based on unrelated conduct can be counted separately for sentencing enhancement, also citing Johnson, infra.[2]
In the alternative, the state further argued that a life sentence would still be appropriate for the defendant, even if he is ultimately held to be a third felony habitual offender.
Before any of the other issues raised in these assignments of error are considered, the validity of the defendant’s conviction as a fourth felony habitual offender must be examined.
La. R.S. 15:529.1(A)(l)(c) provides in pertinent part:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
* * *
(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Acts 2005, No. 218, § 1, added the second sentence to subsection B of La. R.S. 15:529.1:
.... Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.
| flThis amendment statutorily overruled State v. Johnson, supra, which held that multiple convictions obtained on the same *310 date but based on unrelated conduct can be counted separately for sentence enhancement, overruling State ex rel. Mims v. Butler, supra. The legislature made no statement that the amendment was to be applied retroactively, nor did it state that the amendment was to have prospective effect only.
The law in effect at the time of the commission of the offense is determinative of the penalty imposed upon the convicted defendant. In State v. Parker, 2003-0924 (La.4/14/04), 871 So.2d 317, the court explained that a defendant’s habitual offender status is fixed as of the date of the commission of the crime, since this allows defendant’s own acts to establish his status rather than leaving discretion in the hands of prosecuting attorneys. The defendant becomes an habitual offender at the time he commits the predicate offense and is subject to the punishment provided by the law on that date. Habitual offender proceedings are not a separate crime but are ancillary sentencing proceedings that enhance punishment for a new conviction. The fact that the statute may subsequently be amended after commission of a crime to modify or lessen the possible penalty does not extinguish liability for the offense under the statute as it existed at the time of the offense. The supreme court directed that Parker was to be sentenced according to the version of La. R.S. 15:529.1 in effect at the time Parker committed the charged offense. The longstanding general rule is that the law in effect at the time of the commission of the offense governs the penalty. A recidivist becomes an habitual offender on the date he | ^committed the underlying felony. State v. Parker, supra. Parker was not entitled to be sentenced under a less severe penalty enacted after the date of his underlying offense but in effect when he was adjudicated an habitual offender.
Spano committed this last underlying predicate offense on July 12, 2004. His adjudication as a fourth felony offender occurred on September 22, 2005. In between these two dates, Act 218 of the 2005 Louisiana Legislature became effective (August 15, 2005). As previously observed, the legislature did not direct that this amendment have retroactive effect. However, when the amendment was introduced in the Legislature, the comments thereto stated specifically that the amendment was intended to legislatively overrule State v. Johnson, supra. In its final form, Act 218 stated that the intent of the amendment was:
B. It is hereby declared that the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Multiple convictions obtained on the same day prior to October 19, 2001/., shall be counted as one conviction for the purpose of this Section.
Therefore, convictions obtained on the same day prior to October 19, 2004, are to be counted as one offense for purposes of habitual offender adjudications.
Under Parker, supra, Spano’s sentence is governed by the law in effect on the date he committed the predicate offense; i.e., July 12, 2004, when he struck unconscious his IDB attorney. At that time, the habitual [noffender law was governed by La. R.S. 15:529.1 as interpreted by the supreme court in State ex rel. Mims v. Butler, supra, which directed that convictions obtained on the same day be counted as one conviction for purposes of an habitual offender adjudication. Applying *311 Mims, Spano would have been adjudicated a third felony offender.
The supreme court overruled Mims, supra, after the date Spano committed the predicate offense (7/12/04 attack on his lawyer). In State v. Johnson, supra, the supreme court re-interpreted La. R.S. 15:529.1 as it was amended in 1982, by reviewing legislative material unavailable to the Mims court.
The prior offenses upon which Johnson was adjudicated a fourth felony offender were:
1. An armed robbery for which Johnson was arrested on 6/8/82 and convicted 11/15/82 after which he received a 20-year hard labor sentence,
2. A felony auto theft committed on 12/23/92 for which Johnson was arrested on 1/4/93 and to which he pleaded guilty on 8/16/93,
3. A first degree robbery committed on 12/17/92 for which Johnson was arrested on 1/4/93 and for which he pleaded guilty to simple robbery on 8/16/93, and
4. An armed robbery for which Johnson was convicted on 4/24/02.
Justice Weimer examined the 1982 amendment to La. R.S. 15:529.1 and found that the statute did not contain a sequential conviction requirement which the amendment deleted. Overruling Mims, the supreme court held that there is no statutory bar to applying the law in sentencing for more than one conviction obtained on the same date based upon unrelated conduct. Johnson, supra. Thereafter, the Louisiana Legislature then | -^overruled the Johnson decision with Act 218 of the 2005 Louisiana Legislature amending La. R.S. 15:529.1.
In Spano’s adjudication, the minutes and transcripts revealed that both the aggravated battery conviction by guilty plea (Docket # 176,206 of the .First JDC) and the cruelty to juveniles conviction by guilty plea (Docket # 176,681 of the First JDC) occurred on April 15, 1996. Our review also showed that Spano’s criminal conduct for the two 4/15/96 guilty pleas occurred on different days and was not a single course of conduct.
The law that existed at the time of Spa-no’s predicate offense (7/12/04) was the Mims rule of counting multiple convictions on the same day as one. Although the supreme court later overruled Mims, supra, in State v. Johnson, supra, that decision itself was addressed and overruled by the legislative amendment of La. R.S. 15:529.1, which reinstated the Mims rule. While the Legislature did not specifically state the amendment was to have retroactive effect, neither did it state that the law was to be provided prospectively only.
While dealing with another amendment to the Habitual Offender Law which specifically provided that the change was to be applied prospectively only, the court in State v. Jarreau, 2005-0355 (La.App. 4 Cir. 12/14/05), 921 So.2d 155, writ denied, 2006-0131 (La.6/14/06), 929 So.2d 1267, observed that the amendment was an expression of the legislative will at the time it was passed, which must be considered by the court along with other factors in reviewing an excessive sentence claim.
Considering the Louisiana Legislature’s overruling Johnson, supra, by statute, we decline to apply to Spano’s case the Johnson rule of counting multiple convictions on the same day separately as long as they arise out of different courses of action, since his relevant guilty pleas occurred before 10/19/04. Although the 2005 amendment did not speak of prospective or retroactive application, the statute now plainly states that multiple convictions *312 occurring on the same day before the Johnson decision (10/19/04) are to be counted as one. In light of the clearly-stated legislative intent to overrule Johnson, we conclude Spano was improperly adjudicated a fourth felony offender.
Apparently, the legislature has created two schemes; the Mims rule applies to multiple guilty pleas on the same day prior to 10/19/04 (date of Johnson) and to multiple guilty pleas on the same day after 8/15/05, the effective date of the 2005 amendment to 15:259.1. Even though overruled, the Johnson rule will apparently apply to multiple guilty pleas on the same day made between 10/19/04 and 8/15/05, an anomalous situation. Until we receive contrary instructions from the supreme court or the legislative process, we find that multiple convictions on the same day occurring before 10/19/04 are to be counted as one conviction for purposes of habitual offender adjudications.[3]
We note that for Spano, this result may be a distinction without a meaningful difference, as La. R.S. 15:529.1(A)(l)(b) provides, in pertinent part:
|14If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
[[Image here]]
(ii) If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The predicate offense of aggravated battery (Docket # 176,206 of the First JDC) and the instant offense, second degree battery (Docket # 236,880 of the First JDC) are crimes of violence under La. R.S. 14:2(13), and the predicate offense of simple burglary (Docket # 189,413 of the First JDC) is a crime punishable by imprisonment for 12 years. Hence, under “or any combination of such crimes,” Spa-no was at least a third felony habitual offender earning a sentence to life imprisonment without benefits as per La. R.S. 15:529.1(A)(l)(b)(ii).
Because we concluded Spano was incorrectly adjudicated a fourth felony offender, we pretermit addressing Spano’s other complaints.
CONCLUSION
For the foregoing reasons, we affirm the conviction. We vacate Spano’s adjudication as a fourth felony habitual offender, as well as his sentence thereunder, and remand this matter for further proceedings.
CONVICTION AFFIRMED. ADJUDICATION AND SENTENCING VACATED. REMANDED FOR FURTHER PROCEEDINGS.
BROWN, C.J., concurs and dissents with written reasons.

. The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,-807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La. 11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the *308 circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La. 11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.

. This area of the law is quite confusing, but at least the state’s brief has alerted us that there is a dispute on this issue.

. We recognize that reasonable differences of opinion as to the correct application of this aspect of the Habitual Offender Law exist. See Chief Judge Brown’s dissent in State v. Williams, 40,866 (La.App. 2d Cir.4/26/06), 930 So.2d 203.