951 So.2d 124 (2007)
STATE of Louisiana
v.
Wesley DICK.
State of Louisiana
v.
Melvin Smith.
Nos. 2006-KP-2223, 2006-KK-2226.
Supreme Court of Louisiana.
January 26, 2007.
Rehearing Denied March 30, 2007.
*125 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Donna R. Andrieu, Graham L. Bosworth, Assistant District Attorney, for Applicant in No. 2006-KK-2226.
Joseph P. Raspanti, Metairie, Dwight M. Doskey, for Respondent in No. 2006-KK-22226.
Joseph P. Raspanti, Office of Public Defender, Kevin Linder, Dwight M. Doskey, for Applicant in No. 2006-KP-2223.
Charles C. Fonti, Jr., Attorney General, Walter P. Reed, District Attorney, David A. Weilbaecher, Jr., Assistant Attorney, Ieyoub & Landry, Kathryn Landry, Baton Rouge, for Respondent in No. 2006-KP-2223.
KNOLL, Justice.
These consolidated criminal cases concern sentences imposed under prior law and whether La.Rev.Stat. 15:308, pertaining to ameliorating sentences as enacted *126 by 2006 La. Acts No. 45, provides authority for the sentencing courts to modify the defendants' sentences. At the time of the defendants' offenses, convictions and sentencing, La.Rev.Stat. 40:966 B(1) provided a penalty of mandatory life imprisonment. In 2001, the legislature amended La.Rev. Stat. 40:966 B (1) to reduce the penalty for distribution or possession with intent to distribute heroin. For the following reasons we find that although in La.Rev.Stat. 15:308, the legislature mandates retroactive application of the more lenient penalty provisions to those persons who committed crimes, who were convicted or who were sentenced according to La.Rev.Stat. 40:966 B, the legislature did not provide that these offenders may seek resentencing in the courts, the judicial branch of government, because they are constitutionally required to seek relief in the executive branch. Resentencing these offenders in order to retroactively apply the more lenient penalty provisions to offenders whose convictions and sentences are final is, in effect, a commutation of a valid and final sentence, which falls within the executive branch of government, not the judicial branch. Therefore, La.Rev.Stat. 15:308 C correctly provides the offenders' exclusive remedy is before the Louisiana Risk Review Panel, which falls within the executive branch of government.

FACTS AND PROCEDURAL HISTORY
On October 12, 2000, Wesley Dick was found guilty by a jury for the offense of distribution of heroin in May 1999, a violation of La.Rev.Stat. 40:966 A(1) (2000). In January 2001, the trial court sentenced him to life imprisonment at hard labor without benefit of probation or suspension of sentence. See La.Rev.Stat. 40:966 B(1) (prior to amendment by Acts 2001, No. 403, § 4.)
On July 6, 2006, Dick filed a combined Motion to Correct Illegal Sentence/Motion Requesting Retroactive Application of Recent Enactment of LSA-R.S. 15:308. The sentencing court granted the motion, vacated the sentence and sentenced the defendant to serve a period of ten years at hard labor with the Department of Public Safety and Corrections, with credit for time served. The state then filed a Motion to Correct Illegal Sentence, which the trial court denied. The state sought a writ from the court of appeal.
The court of appeal granted the state's writ, reversed the sentencing court's rulings, vacated the ten year sentence and reinstated defendant's original sentence of life imprisonment at hard labor without benefit of probation or suspension of sentence. State v. Dick, 06-1381 (La.App. 1 Cir. 7/20/06), 943 So.2d 389. Defendant sought a writ of certiorari from this court.
Defendant Melvin Smith was convicted in June 1977, of possession with intent to distribute heroin in violation of La.Rev. Stat. 40:966 A(1) (1977). He was sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence. See La.Rev.Stat. 40:96 6B(1) (1977). On August 10, 2006, defendant filed a combined Motion to Correct Illegal Sentence/Motion Requesting Retroactive Application of Recently Enacted LSA-R.S. 15:308. The trial court granted the motion, set aside the previous sentence and sentenced the defendant to twenty-eight years in the custody of the Department of Public Safety and Corrections, with credit for all time served. The trial court further ordered the defendant to be released.
The state sought a writ from the court of appeal. The court of appeal denied the writ. State v. Smith, 06-1212 (La.App. 4 Cir. 9/8/06). The state then sought a writ from this court.
*127 We granted both writs, State v. Dick, 06-2223 (La.9/29/06), 937 So.2d 848 and State v. Smith, 06-2226 (La.9/15/06), 936 So.2d 1251, consolidating them for purposes of argument and opinion, in order to resolve the split among the circuits on the proper application of recently enacted La. Rev.Stat. 15:308.

DISCUSSION
Both defendants were convicted of violation of La.Rev.Stat. 40:966 A(1) for their actions in possessing heroin with intent to distribute. At the time of their convictions and sentencing, La.Rev.Stat. 40:966 B(1) provided that upon conviction, the defendant shall be sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence.
In 2001 La. Acts No. 403, § 4, the legislature reduced the penalty for the distribution of heroin or the possession with intent to distribute from life imprisonment to a term of imprisonment at hard labor for not less than five years nor more than fifty years, at least five years of which must be served without benefit of probation or suspension of sentence. See La.Rev.Stat. 40:966 B(1)(2002).[1] This act became effective on June 15, 2001. The act further provided, in Section 6, that its provisions shall have prospective effect only.
Soon after 2001 La. Acts No. 403 was enacted by the legislature and signed by the governor, this court had occasion to address the issue of whether the ameliorative changes applied solely to crimes committed after the effective date of the act, in State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518. In that case, defendant was charged with possession of heroin on September 5, 1998, in violation of La.Rev.Stat. 40:966 C. At the time of his offense, La. Rev.Stat. 40:966 C provided the sentence, a mandatory minimum of four years, would be without benefit of probation or suspension of sentence. Act No. 403 amended La.Rev.Stat. 40:966 C to delete the language prohibiting probation or suspension of sentence. Defendant pled guilty just days after the effective date of the act; the trial court ordered defendant's sentence suspended and placed him on active probation.
We affirmed the court of appeal's vacation of the penalty. We noted this court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the accused must suffer, State v. Wright, 384 So.2d 399, 401 (La.1980), and that a defendant must be sentenced according to the sentencing provisions in effect at the time of the commission of the offense. State v. Narcisse, 426 So.2d 118, 130-131 (La.1983), cert. denied sub nom. Narcisse v. Louisiana, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); Sugasti, 01-3407 at p. 4, 820 So.2d at 520. We also observed that had it been the intention of the legislature to have the statute apply to all sentences imposed after the effective date of the statute, the legislature could have written the statute to so state. Sugasti, 01-3407 at p. 5, 820 So.2d at 521. We took notice that the legislature specifically provided that the provisions of Act 403 "shall only have prospective effect[;]" therefore, had the legislature intended for the more lenient sentencing provisions to take immediate effect, language signifying that intent could easily have been included in the act. Id.
In addition, 2001 La. Acts No. 403 enacted La.Rev.Stat. 15:574.22, which created the Louisiana Risk Review Panel. See La.Rev.Stat. 15:477.22 A. The Panel has the duty to evaluate the risk of danger to society that each person convicted of a *128 non-violent crime may present if released from confinement in a prison facility. See La.Rev.Stat. 15:574.22 A. When a Panel has determined by a preponderance of the evidence that a person will not present a risk of danger to society if released from confinement, the Panel may make a non-binding recommendation that the person be considered for clemency by the Board of Pardons or considered for parole by the Board of Parole. See La.Rev.Stat. 15:574.22 I.
Initially, the legislature excluded those convicted of many narcotic offenses, including violations of La Rev. Stat. 40:966 A (1), from consideration by the Panel. See La.Rev.Stat. 15:574.22 G(2) (2002). Subsequently, in 2003 La. Acts No. 1231, the legislature amended the statute to create an exception for a person serving a life sentence for a drug offense who has served at least twenty years of the term in actual custody and who has not been convicted of a sex offense where the victim was under age eighteen or sentenced as a habitual offender based on a crime of violence. See La.Rev.Stat. 15:574.22 G(2)(d) (2004). The legislature reduced the amount of time an inmate was required to serve before being eligible for review by the Panel from twenty to seven years, with the adoption of 2005 La. Acts No. 67. See La.Rev.Stat. 15:574.22 G(2)(d).
In 2006, the legislature enacted La.Rev. Stat. 15:308, which is at issue before us in these consolidated cases. 2006 La. Acts No. 45, effective May 16, 2006, added La. Rev.Stat. 15:308, which provides:
Ameliorative penalty provisions; retroactivity; amendment of sentence; time limitations
A. (1) The legislature hereby declares that the provisions of Act No. 403 of the 2001 Regular Session of the Legislature provided for more lenient penalty provisions for certain enumerated crimes and that these penalty provisions were to be applied prospectively.
(2) The legislature hereby further declares that Act No. 45 of the 2002 First Extraordinary Session of the Legislature revised errors in penalty provisions for certain statutes which were amended by Act No. 403 of the 2001 Regular Session of the Legislature and that these revisions were to be applied retroactively to June 15, 2001, and applied to any crime committed subject to such revised penalties on and after such date.
B. In the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according to the following provisions: R.S. 14:56.2(D), 62.1(B) and (C), 69.1(B)(2), 70.1(B), 82(D), 91.7(C), 92.2(B), 92.3(C), 106(G)(2)(a) and (3), 106.1(C)(2), 119(D), 119.1(D), 122.1(D), 123(C)(1) and (2), 352, and 402.1(B), R.S. 15:529.1(A)(1)(b)(ii) and (c)(ii), 1303(B), and 1304(B), R.S. 27:262(C), (D) and (E), 309(C), and 375(C), R.S. 40:966(B), (C)(1), (D), (E), (F) and (G), 967(B)(1), (2), (3), and (4)(a) and (b), and (F)(1), (2), and (3), 979(A), 981, 981.1, 981.2(B) and (C), and 981.3(A)(1) and (E), and Code of Criminal Procedure Art. 893(A) prior to June 15, 2001, provided that such application ameliorates the person's circumstances.
C. Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22.
Defendants Smith and Dick sought application of La.Rev.Stat. 15:308 to their previously mandatory life sentences, which *129 were final, for possession with intent to distribute heroin. Both were granted relief in the trial court, with their sentences being vacated and the court resentencing them to shorter terms within the more lenient sentencing ranges now provided in La.Rev.Stat. 40:966 B(1). The state sought writs from both rulings and the First and Fourth Circuit Courts of Appeal split on whether La.Rev.Stat. 15:308 authorizes courts to resentence offenders who received harsher penalties under the old law.
In State v. Dick, the First Circuit granted the state's writ and reversed the trial court's ruling. The panel reasoned:
The general rule is that the penalty in effect at the time of the commission of the offense is the applicable provision. State v. Sugasti, XXXX-XXXX (La.6/21/02), 820 So.2d 518, 520. La. R.S. 15:308, as enacted by Act 45 of 2006, did not provide authority for the trial court to vacate defendant's sentence. As originally proposed in Senate Bill 126 of 2006, the provision authorized an eligible person to file a motion for reconsideration, amendment, or modification of sentence and authorized the sentencing court to grant such a motion and to impose a more lenient sentence pursuant to Act 403 of 2001. However, those provisions were removed in committee amendments, and the final version of Act 45 authorizes eligible persons to apply to the Louisiana Risk Review Panel. See La. R.S. 15:308 & 15:574.22.

State v. Dick, 06-1381 (La.App. 1 Cir. 7/20/06), 943 So.2d 389.
In State v. Smith, the Fourth Circuit panel denied the State's writ, stating "La. R.S. 15:308 does not provide that application to the Louisiana Risk Review Panel is an exclusive remedy." State v. Smith, 06-1212 (La.App. 4 Cir. 9/8/06). For the reasons that follow, we find the Fourth Circuit erred in determining that Rev. Stat. 15:308 B does not provide that application to the Louisiana Risk Review Panel is an exclusive remedy. By the same token, we find the First Circuit was correct in determining that the trial court does not have authority to vacate these sentences in this class of persons who were sentenced according to the pre-amendment versions of the enumerated statutes in La.Rev.Stat. 15:308 B.
The First Circuit panel favorably adopted the state's interpretation of La. Rev.Stat. 15:308, namely, that the statute did not provide authority for the trial court to vacate the defendant's sentence. The state relies upon paragraph C of the statute, which provides "[s]uch persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22." The state supports their interpretation of La.Rev.Stat. 15:308 by pointing out that original version of Senate Bill 126, subsequently enacted in 2006 La. Acts No. 45, contained language different than that embodied in the enrolled bill, which became the final version of the act. The original bill contained the following:
C. Such persons shall be entitled to have their sentences reviewed, reconsidered, amended and modified in accordance with the amended and more lenient penalty provisions of Act No. 403 of the 2001 Regular Session of the Legislature and Act No. 45 of the 2002 First Extraordinary Session of the Legislature and shall have two years from August 15, 2006, in which to file a motion in the sentencing court for amendment, modification, or reconsideration of his sentence. The court may grant the motion and amend, modify, or reconsider the sentence and impose a more lenient sentence pursuant to the statutes amended by Act No. 403 of the 2001 Regular Session of the Legislature and *130 Act No. 45 of the 2002 First Extraordinary Session of the Legislature.
D. Any amendment, modification, or reconsideration of a criminal sentence as authorized in this Section shall be completed within three years after August 15, 2006.
By implicitly finding that by removal of these provisions from the bill, the enacted statute precludes defendants from seeking correction of the sentences in court, the court of appeal correctly looked to the legislative history to properly interpret the statute.
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Theriot v. Midland Risk Ins. Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128; State v. Piazza, 596 So.2d 817, 819 (La. 1992). Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. Boyter, 99-0761 at p. 9, 756 So.2d at 1128; Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin., 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. State v. Johnson, 03-2993, p. 12 (La.10/19/04), 884 So.2d 568, 575; Theriot, 95-2895 at p. 3, 694 So.2d at 186.
The starting point in the interpretation of any statute is the language of the statute itself. Johnson, 03-2993 at p. 11, 884 So.2d at 575; Theriot, 95-2895 at p. 3, 694 So.2d at 186. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9; Johnson, 03-2993 at p. 12, 884 So.2d at 575. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; Fontenot v. Reddell Vidrine Water Dist., 02-0439, p. 7, (La.1/14/03), 836 So.2d 14, 20. Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.
The language of the statute at issue before us is ambiguous and susceptible of different meanings, thus requiring us to ascertain the legislative intent and interpret the meaning that best conforms to the law's purpose. The language of paragraph B provides "[i]n the interest in fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature . . . shall apply to the class of persons who committed crimes, who were convicted, or who were sentenced according to . . . R.S. 40:966(B) . . . prior to June 15, 2001, provided that such application ameliorates the person's circumstances." La. Rev.Stat. 15:308 B. The statute then continues in paragraph C, declaring "[s]uch persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to R.S. 15:574.22." La.Rev.Stat. 15:308 C. For purposes of statutory construction, the word "shall" denotes a mandatory duty. La.Rev.Stat. 1:3; Boyter, 99-0761 at p. 10, 756 So.2d at 1129. The statute contains two mandatory provisions; it mandates the more lenient penalty provisions shall apply *131 to those convicted and sentenced prior to June 15, 2001 and further mandates these persons shall be entitled to apply to the Louisiana Risk Review Panel. These conflicting provisions, one mandating retroactive application of a penalty to an offender already convicted and sentenced and another mandating these offenders are entitled to apply to the Louisiana Risk Review Panel, necessitate that we examine the legislative history in order to accurately determine the legislature's intent.
Contrary to the defendants' assertions, we find the legislature did not intend, nor did it legislate, that these offenders may seek resentencing in the courts after a sentence has become final. The First Circuit Court of Appeal correctly looked to the changes the legislature effectuated in paragraph C of the original bill compared with the final version of the enrolled bill, which was enacted as Acts 2006, No. 45 and codified at La.Rev.Stat. 15:308. The bill, as originally introduced, clearly provided for persons to whom paragraph B's provisions apply to have two years from August 15, 2006 "to file a motion in the sentencing court for amendment, modification, or reconsideration of his sentence." Senate Bill No. 126, Original, 2006 Regular Session. The legislature clearly evidenced its intent with its change to paragraph C, which, as enacted, mandates these persons are entitled to apply to the Louisiana Risk Review Panel, but no more.
More importantly, under our constitutional division of the state's governmental powers among three separate branches, the legislature could not have conferred upon the judicial branch a power reserved to the executive branch. The legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Johnson, 03-2993, p. 14, 884 So.2d at 576; State v. Campbell, 03-3035, p. 8 (La.7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. Johnson, 03-2993 at p. 14, 884 So.2d at 576-77; Campbell, 03-3035 at p. 8, 877 So.2d at 117.
The Louisiana Constitution provides "[t]he powers of government of the state are divided into three separate branches: legislative, executive, and judicial." La. Const. art. II, § 1; State v. Rome, 96-0991, p. 3 (La.7/1/97), 696 So.2d 976, 978; Bosworth v. Whitley, 627 So.2d 629, 632 (La.1993). The Louisiana Constitution further provides "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. art. II, § 2; Id The people of Louisiana have traditionally invested the executive with broad powers of clemency. Bosworth, 627 So.2d at 632. The governor's power to commute dates from Article 66 of the Constitution of 1879, and the authority to pardon, reprieve and remit can be traced to the 1804 Territorial Laws of Louisiana and Orleans. Id. La. Const. art. IV, § 5(E) (1974) provides:
(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a nonviolent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of *132 weapons or dangerous instrumentalities never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
(2) The Board of Pardons shall consist of five electors appointed by the governor, subject to confirmation by the Senate. Each member of the board shall serve a term concurrent with that of the governor appointing him.
The governor has exclusive authority over matters of clemency pursuant to Article IV, § 5(E). Bosworth, 627 So.2d at 632. The power to commute sentences is an incident of the power to pardon, constitutionally vested in the governor. State v. Chase, 329 So.2d 434, 437 (La.1976). Were we to adopt the defendants' contention that La.Rev.Stat. 15:308 provides authority for sentencing courts to reduce the defendants' sentences after they became final, this would, in effect, allow the judiciary to exercise the power of commutation, a power constitutionally reserved exclusively to the executive branch. The legislature, enacting the statute with deliberation and cognizant of these constitutional articles, did not intend nor did it provide for these offenders to have their final sentences reduced by the courts.
Although we have not had occasion, before now, to address whether reducing a final sentence is the equivalent of commutation, other states have. With interest, we observe the Colorado Supreme Court held that a statute conferring upon the courts the power to review sentences to allow retroactive application of statutorily reduced penalties is equivalent to the power of commutation, which is a violation of their state constitution. People v. Herrera, 183 Colo. 155, 516 P.2d 626, 628-629 (1973). The Colorado legislature statutorily sought to confer upon the courts the express power to review sentences after conviction and exhaustion of appellate remedies. Id. at 628. The legislature intended to confer a right of review of sentences, where the sentences either exceeded the maximums authorized by the new code for the same offenses, or exceeded by three years the minimums provided by it. Id. Implied in the statute was the authority to reduce a sentence after a final convictionthe power of commutation. Id. Colorado's Constitution provided "[t]he governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason. . . ." Id.
The power of commutation is the power to reduce punishment from a greater to a lesser sentence. Id. (citing, inter alia, People v. Jenkins, 325 Ill. 372, 156 N.E. 290; Whittington v. Stevens, 221 Miss. 598, 73 So.2d 137; Black's Law Dictionary, (4th rev. ed. 1968); Am.Jur.2d, Pardon and Parole, § 65). Colorado's Constitution does not vest the power of commutation in the courts. Herrera, 516 P.2d at 628. Any attempt to exercise the governor's exclusive power to grant reprieves, commutations and pardons by the judiciary, even though legislatively sanctioned, would be a violation of the doctrine of separation of powers under the Colorado Constitution. Id. at 629. That court observed that other states with similar constitutional provisions have reached like conclusions. Id. (citing, inter alia, People v. Fox, 312 Mich. 577, 20 N.W.2d 732; Whittington v. Stevens, 221 Miss. 598, 73 So.2d 137; State v. Dist. Court, 68 Mont. 309, 218 P. 558; State v. Lewis, 226 N.C. 249, 37 S.E.2d 691; Gilderbloom v. State, 160 Tex.Cr.R. 471, 272 S.W.2d 106).
Louisiana has constitutionally vested its power of commutation in the executive branch. The legislature, cognizant of this and aware of our constitution's *133 prohibition of one branch exercising a power belonging to another branch, thus provided that offenders seeking retroactive application of the ameliorative penalty provisions must seek this relief in the executive branch; they are entitled to apply to the Louisiana Risk Review Panel. However, the legislature is the branch of government with sole authority to enact statutes defining criminal offenses and to establish penalties for those offenses. Rome, 96-0991 at pp. 3-4, 272 S.W.2d 106, 696 So.2d at 978; La.Rev.Stat. 15:321 A.[2] In enacting this statute, the legislature is suggesting to the executive branch that it should consider these ameliorative sentencing provisions when reviewing the offenders' applications to the Louisiana Risk Review Panel, the Board of Pardons and/or the Board of Parole.[3]

CONCLUSION
For the foregoing reasons, we find the defendants err in their assertions that La. Rev.Stat. 15:308 provides authority for the courts to resentence offenders after their sentences have become final. The legislature did not intend, nor does La.Rev.Stat. 15:308 provide, that these offenders may seek resentencing in the courts. Moreover, allowing the courts to reduce the offenders' final sentences would, in effect, commute a valid sentence, a power the legislature knows to be constitutionally reserved to the executive branch.

DECREE
Accordingly, the judgment of the First Circuit Court of Appeal is affirmed. The State v. Dick matter is remanded to the district court for execution of the original sentence, in accordance with the court of appeal's ruling. The appellate court decision in State v. Smith is reversed; defendant's original sentence of life imprisonment at hard labor without benefit of probation or suspension of sentence is reinstated and the case is remanded to the district court for execution of sentence.
06-KP-2223 AFFIRMED.
06-KK-2226 REVERSED AND REMANDED.
CALOGERO, C.J., concurs in the result and assign reasons.
JOHNSON, J., dissents and assigns reasons.
TRAYLOR, J., concurs in the result and assigns reasons.
CALOGERO, Chief Justice, concurring.
I concur in the result, i.e., that the person must first apply to the Louisiana Risk Review Panel under La.Rev.Stat. 15:308.
*134 JOHNSON, Justice, dissenting.
In my view, the language of LSA-R.S. 15:308 is clear and unambiguous, and no further interpretation of the legislature's intent is necessary. The legislature clearly expressed its intent in the statute by stating "[i]n the interest of fairness in sentencing, the legislature hereby further declares that the more lenient penalty provisions provided for in Act No. 403 of the 2001 Regular Session of the Legislature . . . shall apply to the class of persons who committed crimes, who were convicted, who were sentenced according to LSA-R.S. 40:966(B) . . . prior to June 15, 2001, provided that such application ameliorates the person's circumstances."
LSA-R.S. 40:966 B(1), as amended, reduced the penalty for possession with the intent to distribute heroin from mandatory life imprisonment at hard labor without benefit of probation or suspension of sentence, to a sentence range from five to fifty years imprisonment at hard labor, at least five years of which must be served "without benefit," and an optional fine not to exceed $50,000.
This statute addressed the inequity between penalties for identical offenses committed before and after the amendments went into effect, by giving offenders who received the harsher sentences the opportunity to have their sentences reduced in accordance with the ameliorative legislation. Further, the legislative intent was to give the trial court the discretion to resentence defendants to sentences other than life imprisonment.
In these consolidated criminal cases, both defendants Wesley Dick, and Melvin Smith, were charged and convicted of violation of LSA-40:966A(1). Both defendants Smith and Dick were sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence. Both asked for the benefits of the retroactivity of the statute. The respective trial courts granted both defendants' Motion to Correct Illegal Sentence/Motion Requesting Retroactive Application of the recently enacted LSA-R.S.15:308(B). The respective trial judges resentenced them to shorter terms within the lenient sentencing ranges provided by LSA-R.S. 40:966 B(1). Smith was sentenced to 28 years imprisonment at hard labor with credit for time served, and ordered released. Dick was resentenced to 10 years at hard labor.
The general rule in interpretation of statutory changes is that ameliorative legislation must be applied prospectively, unless the statute provides for retroactive application. In the 2001 Regular Session of the Legislature, this statute was amended to apply retroactively to June 15, 2001. The present statute allows for retroactive application of the more lenient penalty provisions to the class of persons who committed crimes, and who were convicted, or who were sentenced prior to June 15, 2001. The legislature has made substantial changes in the penalty provisions of the statute, as well as declared that the statute must be applied retroactively
In State v. Mayeux, 01-3195(La.6/21/02), 820 So.2d 526, this Court considered the issue of whether those defendant already convicted of driving while intoxicated(DWI) could gain relief from the amended legislation. In Mayeux, this Court stated:
. . . Louisiana's prior case law on the subject has adhered to the rule that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." State v. Wright, 384 So.2d 399, 401 (La.1980); see also, State v. Clark, 391 So.2d 1174 (La.1980); accord, State v. Paciera, 290 So.2d 681 (La.1974)(Imposition of a sentence under *135 a statute in effect at the time an offense was committed rather than lesser sentence provided for by an amended statute which was enacted after commission of the charged offense and prior to conviction did not deny defendant due process or equal protection when the amendatory statute provided that it was not to apply to crimes committed prior to the effective date of the amendment.). Although this rule of law has been consistently applied in the courts of this state,[1] the rule requiring the penalty provision in effect at the time of the offense be the governing provision where an ameliorative change in the law has occurred is not followed in all jurisdictions. See Clark, 391 So.2d at 1176 n. 1; see also, State v. Morris, 131 Idaho 263, 954 P.2d 681 (1998)(Defendant convicted of first degree burglary was subject to maximum ten-year sentence under amended burglary statute enacted after he committed offense but before he was sentenced, rather than to maximum 15 year sentence under statute in effect when he committed offense, where amended statute did not include savings clause and did not indicate which maximum sentence should apply.). This rule is followed by a majority of the states that have dealt with the issue. See State v. Von Geldern, 64 Haw. 210, 638 P.2d 319 (1981); Elkins v. State, 659 N.E.2d 563 (Ind.App.1995); People v. Schultz, 435 Mich. 517, 460 N.W.2d 505 (1990); State v. Coolidge, 282 N.W.2d 511 (Minn.1979); State v. Pardon, 272 N.C. 72, 157 S.E.2d 698 (1967); State v. Cummings, 386 N.W.2d 468 (N.D.1986); State v. Macarelli, 118 R.I. 693, 375 A.2d 944 (1977).
Thus, while current Louisiana appellate court jurisprudence holds that the law in effect at the time of the offense should control the sentencing of the instant defendant, this court has not concluded definitely that, in a case such as the one before it here concerning the specific statutory provisions of the amended LSA-R.S. 14:98, the date of the offense and not the date of the conviction controls. Specifically, this case differs from both Wright, 384 So.2d 399, and Clark, 391 So.2d 1174, in that those cases dealt only with changes in the term of imprisonment. In both of those cases, the earlier statute, LSA-R.S. 14:67.1, had provided for a penalty of imprisonment at hard labor of "not less than one nor more than ten years," for the crime of theft of livestock. As amended, the penalty provided for imprisonment for "not more than one year." Nothing in the language of the statute changed except the term of imprisonment.
Conversely, here, as discussed at length above, the legislature made substantial changes to the penalty provisions of the statute as well as adding a "policy" statement to the statute. See LSA-R.S. 14:98(G). While the amended version of the statute does not specifically address the "retroactivity" of the new provisions, the statute does state that "upon conviction" and not "upon committing the offense" the defendant shall be punished to a specific term. Finally, imposing the harsher penalty in such circumstances would serve no valid penological purpose, particularly in the instant case in which the legislature has made a policy determination that a third or fourth DWI offense is presumptive evidence of the existence of a substance *136 abuse disorder and that successful treatment methods other than imprisonment are available and effective for such disorders.
The legislature also created the Louisiana Risk Review Panel[2] to facilitate applications to the Board of Pardons or Board of Parole. Under LSAR.S. 15:574.22, the panel has "the duty to evaluate the risk of danger to society which each person convicted of a [non-violent] crime . . . may present if released from confinement." LSA-R.S. 15:574.22(G). If the panel has determined by a preponderance of the evidence that a person will not present a risk of danger to society if released from confinement, the panel may recommend that the person be considered for clemency by the Board of Pardons or the panel may recommend that the person be considered for parole by the Board of Parole. LSAR.S. 15:574.22(I). Although the legislature initially excluded those convicted of many narcotics offenses from consideration by the panel, LSA-R.S. 15:574.22(G)(2), the legislature amended the statute to create an exception for a person serving a life sentence for a drug offense "who has served at least twenty years of the term in actual custody" and who is not serving an habitual offender sentence based on a crime of violence. LSAR.S. 15:574.22(G)(2)(d); 2003 La. Acts 1231. In 2005, the legislature reduced the amount of time an inmate was required to serve before being entitled to review by the panel, from twenty to seven years. 2005 La. Acts 67.
In the instant case, Paragraph C of LSA-R.S. 15:308 provides:
C. Such persons shall be entitled to apply to the Louisiana Risk Review Panel pursuant to LSA-R.S. 15:574.22.
In my mind, Paragraph C does not mandate that application to the Risk Review Panel is a defendant's exclusive remedy. To interpret LSA-R.S. 15:308 C to make the Risk Review Panel a defendant's exclusive remedy would produce a result so inappropriate as to be outside the purpose of the law, given the language of LSA-R.S. 15:308. Rather, LSA-R.S. 15:308 C provides these "persons[ those who, inter alia, were convicted or sentenced according to the provisions listed in Paragraph B] shall be entitled to apply to the Louisiana Risk Review Panel . . ." Had the legislature omitted the words "be entitled," then we would have language mandating that these defendants apply exclusively to the Louisiana Risk Review Panel for relief.
Notably, defendants have a right to seek the relief afforded by the Louisiana Risk Review Panel. However, nothing in the statute requires that application to the Louisiana Risk Review Panel is the exclusive remedy, or that defendants are required to seek relief from the Louisiana Risk Review Panel before seeking a correction *137 of their now illegal sentence in the district court.
LSA-C.Cr.P art. 881.5 allows a defendant, the state, or the court on its own motion, to correct an illegal sentence at any time, when the sentence exceeds the maximum imposed by law. Further, LSA-C.Cr.P. art 882(A) allows the sentencing court or appellate court, on review, to correct an illegal sentence at any time. Here, we have two defendants who qualify for the more lenient provisions set forth in LSA-R.S. 15:308, as they were convicted and/or sentenced to the mandatory life imprisonment prior to June 15, 2001, as outlined in the statute. Thus, both defendants' sentences are now illegal, pursuant to LSA-15:308. Therefore, LSA-C.Cr.P art. 881.5 would allow these defendants the right the challenge their now illegal sentences in the trial courts.
What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Johnson 03-2993(La.10/19/04), 884 So.2d 568. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA-C.C. art. 9; Johnson, 03-2993 at p. 12 884 So.2d at 575. To rule that a defendant whose sentence is now illegal by 15:308 B, may only seek relief from the Louisiana Risk Review Panel, would eviscerate the legislative intent clearly expressed in Paragraph B.
The majority seeks to discern legislative intent by looking to language that was omitted from the final version of the statute. The omitted language[3] merely duplicates the provisions set forth in LSA-C.Cr.P art. 881.5, which allow a defendant, the state, or the court on its own motion, to correct an illegal sentence at any time.
The legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Johnson, 03-2993, p. 14, 884 So.2d at 576; State v. Campbell, 03-3035, p. 8 (La.7/6/04),877 So.2d 112, 117. Thus, legislative language must be interpreted on the assumption that the legislature was aware of existing statutes, well established principles of statutory construction, and with the knowledge of the effect of their acts, and a purpose in view. Johnson, supra at p. 14, 884 So.2d at 576; Campbell, supra at p. 8, 877 So.2d at 117. It is axiomatic that establishing penalties for criminal offenses is the province of the legislative branch of government and that sentencing is the province of the judicial branch of government, See LSA-R.S. 15:321 A. Pardon and parole are the province of the executive branch in accordance with LSA-R.S. 15:572 and LSA-R.S. 15:574.2.
Since the legislature has declared a clear intent to make the more lenient penalty provisions retroactive, the only way to effect the change is by motion in the district court.
TRAYLOR, Justice, concurring.
I concur in the result, i.e., that the person must apply to the Louisiana Risk Review Panel under La. R.S. 15:308.
NOTES
[1] This particular subparagraph has not been amended since that act.
[2] La.Rev.Stat. 15:321 A provides:

The enactment of statutes defining criminal offenses and the establishment of ranges of penalties for those offenses is a matter of substantive law solely within the prerogative of the legislature. The determination and imposition of sentence in particular cases is generally the function of the sentencing court, subject to appellate review and to mandatory sentences provided by law.
[3] Louisiana's Risk Review Panel statute provides, in pertinent part:

When a panel has determined by a preponderance of the evidence that a person will not present a risk of danger to society if released from confinement, the panel may recommend that the person be considered for clemency by the Board of Pardons or the panel may recommend that the person be considered for parole by the Board of Parole. The panel may also recommend to the appropriate board such conditions for clemency or parole as it may deem advisable. Any recommendation of the panel shall not be binding on the Board of Pardons or the Board of Parole. La.Rev.Stat. 15:574.22 I.
[1] See State v. Thomas, 464 So.2d 470, 472 (La.App. 1 Cir.1985); State v. Lapoint, 93-1141, p. 9 (La.App. 3 Cir. 4/6/94), 635 So.2d 554, 559, vacated on other grounds and remanded, 94-1173 (La.9/23/94), 642 So.2d 1304; State v. Bryan, 535 So.2d 815, 820 (La.App. 2 Cir.1988).
[2] In 2001 the legislature enacted La. R.S. 15:574.22 authorized a "Parole Risk Assessment Pilot Program" and the creation of up to three "Risk Review Panels."

Louisiana Revised Statute 15:574.22(G) provides, in pertinent part:
G. The panel shall have the duty to evaluate the risk of danger to society which each person who has been convicted of a crime not defined or enumerated as a crime of violence in R.S. 14:2(13), and who is confined in a prison facility of any kind, iiii (Emphasis added.)
The Louisiana Risk Review Panel following review, may recommend that the inmate be considered for clemency by the Pardon Board or the panel may recommend that the inmate be considered for parole by the Parole Board. This statute was effective on June 15, 2001, and has prospective effect. Any recommendation of the panel shall not be binding on the Board of Pardons or the Board of Parole.
[3] The language omitted from the statute entitled those affected by the change in the law to have their sentences reviewed, reconsidered, and amended and modified by the sentencing court.