Dear Mr. Broussard:
You have requested an opinion of this Office on the proper interpretation of certain provisions of the Louisiana Department of Environmental Quality's ("LDEQ") Debris Management Plan. Specifically, you have asked whether the provisions of La.R.S. 30:2413.1 (C) require the reduction of green and woody debris by weight and volume to occur prior to being transported to the landfill or prior to final disposal in a landfill. As will be discussed in more detail herein, it is the opinion of this Office that the statute only requires that the debris be reduced prior to its final disposal in a landfill, and that such reduction can take place on landfill property or off-site.
Background
Before delving into the specific legal issues, it is important to first discuss the pertinent laws, rules, and regulations that the State of Louisiana is operating under at the present time. Many parishes in the State are operating under a state of emergency due to the situations created by Hurricanes Gustav and Ike, which impacted Louisiana on September 1, 2008, and September 13, 2008, respectively. See, State of Louisiana Proclamation Nos. 58 BJ 2008 and 60 BJ 2008. Further, in response to the hurricanes, the Secretary of LDEQ issued two Declarations of Emergency and Administrative Orders pursuant to his authority under La.R.S. 30:2033 and 2011(D)(6).[1] Pursuant to the aforementioned declarations, certain measures were put into place in order to prevent irreparable damage to the environment and serious threats to life or safety. *Page 2 
One of those measures includes the obligation that all owners and operators of solid waste management facilities and local governments consult and adhere to the State of Louisiana's "Comprehensive Plan for Disaster Clean-up and Debris Management," revised August 2006 edition ("Debris Management Plan").[2]
Discussion
Act 662 of the 2006 Legislative Session, enacting La.R.S. 30:2413.1, was enacted as a direct response to the devastation unleashed upon South Louisiana as a result of the 2005 hurricane season, and the ensuing environmental problems caused by the debris left behind. Specifically, the Legislature became aware of the need to develop a comprehensive debris management plan to be implemented by the State in response to natural disasters. Thus, this Act directed the secretary of the LDEQ to "develop and implement a comprehensive debris management plan for debris generated by state and federally declared disasters and debris generated from the rebuilding efforts . . ." La.R.S. 30:2413.1(B).
Of import to the current matter, part C of this statute provides as follows:
 Of the total green and woody debris intended for final disposal in a landfill, fifty percent shall be reduced by weight and fifty percent by volume prior to transport to a landfill . . .
La.R.S. 30:2413.1 (C). It is clear from your opinion request that there is some uncertainty as to the proper interpretation of the above-cited reduction requirement. In particular, it would seem that a situation could arise, for example, whereby a landfill has an on-site debris management site[3] that could be used to fulfill the reduction requirements of the Act. Thus, the question arises as to whether the condition that debris be reduced by weight and volume "prior to transportto a landfill" prohibits the on-site reduction of debris.
In order to interpret the proper meaning of La.R.S. 30:2413.1(C), we must look to the rules of statutory construction, which are set out in the Louisiana Civil Code and applicable jurisprudence. Legislation is the solemn expression of legislative will; therefore, when a statute is unclear, statutory interpretation involves ascertaining the legislative intent and the reasons that prompted the legislature to enact the law. La.C.C. Art. 2; State v. Dick, 2006-2223 (La. 1/26/07), 951 So.2d 124.
The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be *Page 3 
made in search of the intent of the legislature." La.C.C. Art. 9. However, "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.C.C. Art. 10. Further, the meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. Colvin v.Louisiana Patients Compensation Fund Oversight Board, 2006-1104 (La. 1/17/07), 947 So.2d 15.
With these rules in mind, we must first look to the language of the Act to determine the correct meaning of La.R.S. 30:2413.1 (C). While the phrase "prior to transport to a landfill," at first glance, appears to be clear and unambiguous, in application, such a literal interpretation may lead to absurd consequences. The purpose of Act 662 was clearly expressed:
 The legislature further finds and declares that a comprehensive management plan for debris generated by natural disasters within the state of Louisiana should be prepared in advance to facilitate a reasonable, efficient, and prompt recovery . . . [emphasis added]
La.R.S. 30:2413.1 (A). Thus, if the owner or operator of a landfill has the capacity to reduce green and woody debris on the property on which the landfill is located (on-site), then any interpretation of the statute that would prohibit this activity would have the effect of slowing down the recovery process. This is because in situations where on-site reduction is possible, such would be a more reasonable and efficient method of disposal than requiring that the debris be transported twice: first to an off-site reduction facility, and then to the landfill.
It is therefore the opinion of this Office that the provisions of La.R.S. 30:2413.1(C) allow for on-site reduction of green and woody debris. In other words, so long as the debris is reduced prior to its final disposal in the landfill, then the requirements of the law, and the purpose of Act 662, are being fulfilled.
This same conclusion can also be reached by differentiating between a landfill and the property on which a landfill is located. It is possible, and indeed likely, that the property on which a landfill (the specific area of land where disposal takes place) is located may encompass more terrain than just the landfill location. As such, transporting and reducing the debris on the property (on-site) prior to transporting same for final disposal in the landfill comports with the requirement that the debris be reduced prior to transport to the landfill. It is unlikely that a debris management site, setup for debris reduction, will be located in the actual landfill. Rather, the reduction site will be located on the property on which the landfill sits, thus complying with the terms of the Act. *Page 4 
Conclusion
In summary, it is the opinion of this Office that the provisions of La.R.S. 30:2413.1 (C) require only that green and woody debris be reduced prior to actually being disposed of in a landfill. Therefore, it is also the opinion of this Office that this statute allows the reduction of the debris to occur on the property on which the landfill is located. The purpose of Act 662 is to ensure the reasonable, efficient, and prompt recovery from natural disasters, and the aforementioned interpretation is consistent with this goal.
Moreover, this interpretation also complies with the specific requirement of part C of this Act, which was aimed at ensuring that reduction take place prior to final disposal. Finally, it is important to note that nothing in this opinion is intended to authorize any entity to transport, reduce, or dispose of green and woody debris without the proper permits as may be required by LDEQ, the local governing authority, or any other entity regulating debris management or disposal activities.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
 Yours truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:
 Megan K. Terrell
 Assistant Attorney General
 JDC/MKT/tp
[1] See, In the Matter of Hurricane Gustav and Its Aftermath, Agency Interest No. 160278, First Amended Declaration of Emergency and Administrative Order, Sept. 6, 2008,

http://www.deg.louisiana.gov/portal/portals/0/news/pdf/1stAmendedDeclarofEmerAdminOrder9-6-08signed.pdf

and In the Matter of Hurricane Ike and Its Aftermath, Agency Interest No. 160462, Declaration of Emergency and Administrative Order, Sept. 12, 2008,http://www.deg.louisiana.gov/portal/portals/0/news/pdf/lkeDeclar9-12-08.pdf. Sites last visited Sept. 17, 2008.
[2] This Plan appears as Appendix D to LDEQ's Declaration of Emergency and Administrative Orders, supra, n. 1.
[3] "Debris Management Site" is defined in the Debris Management Plan as "a location that has been identified by the local government and evaluated and approved by LDEQ for the purposes of staging, reduction or final disposal of disaster-generated debris." See, Debris Management Plan, supra, n. 1.