WEIMER, J., dissenting.
 

 The majority's opinion ignores a statutory mandate enacted by the legislature and usurps the authority constitutionally granted to the executive branch. As a result, the statutorily-mandated vetting by the executive branch's committee on parole, which is tasked with determining whether the offender presents a danger to society, is stricken from the statute.
 

 The legislature carefully established a vetting procedure, which involves an evaluation by the committee on parole prior to an offender receiving the benefit of a reduction in sentence. However, after this court's majority opinion for reducing certain criminal sentences, what is the role of
 the committee on parole? According to the majority opinion, there is no role whatsoever.
 

 According to the mandate of the legislature in La. R.S. 15:308(C), however, any reduction in sentence or release from confinement is entirely within the discretion of the committee on parole, after the committee considers whether the offender has served sufficient time and the committee determines whether the offender presents a "risk of danger ... to society if released from confinement." La. R.S. 15:574.2(I)(1). According to this court's majority opinion, instead of the committee on parole making a case-by-case evaluation of an offender's danger to society, the court system is empowered to release an offender, and to do so without evaluating whether the offender has demonstrated conduct that presents a danger to society. Under the holding of the majority opinion, an offender's release is apparently automatic after petitioning a court to turn back the clock by applying shorter periods of incarceration than those that lawfully applied when the offender was sentenced.
 

 This court has previously examined whether, based on the legislature's subsequent reduction of a criminal penalty, the judiciary can reduce criminal sentences that were lawful when imposed.
 
 See
 

 State v. Dick
 
 , 06-2223, 06-2226 (La. 1/26/07),
 
 951 So.2d 124
 
 . This court concluded: "[A]llowing the courts to reduce the offenders' final sentences would, in effect, commute a valid sentence, a power the legislature knows to be constitutionally reserved to the executive branch."
 

 Id.
 

 , 06-2223, 06-2226 at 14,
 
 951 So.2d at 133
 
 . In so ruling, this court was aligned with a majority of jurisdictions which have found that the power to reduce final sentences belongs to the executive branch.
 
 [1]
 

 The majority of this court now claims that
 
 Dick
 
 was wrongly decided because: 1) the legislature is authorized to set penalties; 2) the judiciary has the power to impose sentences; and 3) anything not prohibited by the constitution is allowed.
 
 See
 

 State ex rel. John Esteen v. State
 
 , 16-0949, op. at 236-37 (La. 1/30/2018). These three principles are certainly important,
 but the majority has misapplied them. By giving a straightforward effect to La. R.S. 15:308, there is no justification for overruling
 
 Dick
 
 because La. R.S. 15:308 contains a proper respect for the separation of powers.
 
 [2]
 
 Indeed, the majority's opinion recites-with a parsing that inescapably requires involvement of the committee on parole-how the legislature invokes the authority of the executive branch of government:
 

 Specifically, La. R.S. 15:308(B) mandates that the ameliorative provisions shall apply retroactively to offenders who are already sentenced while La. R.S. 15:308(C) entitles an offender to apply to the committee on parole, which will, "taking into consideration the risk of danger the applicant would pose to society if released from confinement," issue a recommendation to the Board of Pardons regarding "
 
 whether
 
 the applicant is eligible for a reduction." La. R.S. 15:574.2(I)(1) (emphasis added).
 

 Esteen
 
 , op. at 235-36.
 

 Notwithstanding the legislative mandate just quoted, the majority circumvents the committee on parole and tasks the judiciary with reducing lawfully imposed sentences. Such result requires ignoring the entirety of Section C of La. R.S. 15:308, by which the legislature invokes the authority of the executive branch of government, specifically, the authority of the committee on parole. In so doing, the majority also disregards another fundamental precept dictated by the legislature: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4.
 

 The result reached by the majority is all the more perplexing when one recognizes that the majority gives no effect to the committee on parole (whose authority is specifically mentioned in Section C of La. R.S. 15:308 ), yet simultaneously declares that the petitioner's sentence can be changed by the judiciary via a statute that is nowhere mentioned in La. R.S. 15:308 -namely La. C.Cr.P. art. 881.5 (dealing with correction of illegal sentences).
 
 [3]
 
 To be fair, in a footnote, the majority purports to allow some authority to the committee on parole, inasmuch as the majority finds there is a class of sentences which "falls within the ranges of both the harsher and more lenient penalty provision[s]," and the majority declares that for such sentences, an "offender's avenue for relief is by application to the committee on parole."
 
 Esteen
 
 , op. at 237-38 n.4. In its footnote, however, the majority again does no service to longstanding law, as the majority's
 solution for a second class of offenses amounts to an advisory opinion for facts not presented here. "It is well-settled in the jurisprudence of this state that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such controversies."
 
 Shepherd v. Schedler
 
 , 15-1750, p. 13 (La. 1/27/16),
 
 209 So.3d 752
 
 , 764.
 

 For the facts at hand, I find the legislature has given a straightforward solution. In Section B of La. R.S. 15:308, the legislature has made available reduced sentences for certain non-violent offenses. The legislature has not made reduction of sentences for those crimes automatic, nor has the legislature tasked the courts with deciding whether to reduce such sentences or to release any offender. Instead, in Section C of La. R.S. 15:308, the legislature invokes the authority and duties of the parole board. Among those duties, one is noteworthy: "[T]o determine the time and conditions of release on parole of any person who has been convicted of a felony and sentenced to imprisonment, and confined in any penal or correctional institution in this state." La. R.S. 15:574.2(D)(1).
 
 [4]
 

 Regardless of whether any judge, myself included, may personally agree with efforts to avoid Louisiana being castigated as the "incarceration capital" of the nation,
 
 [5]
 
 in our legal system, judges must act within the bounds established by the legislature and the constitution. Through its latest iteration of La. R.S.15:308, the legislature wisely recognized what the majority of this court does not. Release from or reduction of a lawfully-imposed sentence should not be automatic (as the majority of this court presently holds), but is instead made contingent on the case-by-case determination of the committee on parole (a component of the executive branch of government) and satisfaction of any conditions imposed by that committee. A most unfortunate result of the majority's ruling, which is tantamount to usurping the powers of the executive branch, but without the review procedures normally performed by the executive branch, is that potentially dangerous offenders will be released without the statutorily-mandated vetting. Thus, I respectfully dissent.
 

 CLARK, J., Dissents for the reasons assigned by Justice Weimer and assigns additional reasons.
 

 I respectfully dissent for the reasons assigned by Justice Weimer. I write separately to express my disagreement with a broad interpretation of La. R.S. 15:308. I believe that incarcerated inmates serving sentences pursuant to plea agreements with the state should not be eligible to seek a reduction in their sentences under La. R.S. 15:308.
 

 Louisiana Code Crim. Proc. Art. 881.2 (A)(2) expressly provides that "[t]he defendant cannot appeal or seek review of a sentence imposed inconformity with a plea agreement which was set forth in the record at the time of the plea." Once a defendant is sentenced pursuant to a valid plea agreement, he is bound by the terms of the agreement and should have to serve that sentence.
 

 Crichton, J., additionally concurs and assigns reasons.
 

 I agree with and join in the per curiam in this matter. I write separately to acknowledge that I am cognizant of the logistical challenges this opinion may pose. However, I am ultimately convinced that the judiciary's "traditional, inherent, and exclusive" power to sentence within the range fixed by the legislature is paramount.
 
 State v. Rome
 
 , 96-0991, pp. 3-4 (La. 7/1/97),
 
 696 So.2d 976
 
 , 978.
 

 See
 

 State v. Philipps
 
 ,
 
 246 Neb. 610
 
 ,
 
 521 N.W.2d 913
 
 , 917 (1994) ("[T]o interpret a statute such that it would reduce, without the approval of the Board of Pardons, a sentence imposed prior to its enactment would render the statute unconstitutional, for it would permit a legislative invasion of the power of commutation constitutionally consigned to the board.");
 
 State v. Cummings
 
 ,
 
 386 N.W.2d 468
 
 , 472 n.2 (N.D. 1986) ("Legislation lessening punishment may not be applied to final convictions because this would constitute an invalid exercise by the Legislature of the executive pardoning power.");
 
 Bossie v. State
 
 ,
 
 488 A.2d 477
 
 , 480 (Me. 1985) (holding that the power to commute sentences was "explicitly and exclusively granted to the executive.");
 
 Commonwealth v. Sutley
 
 ,
 
 474 Pa. 256
 
 ,
 
 378 A.2d 780
 
 , 782, 789 (1977) (holding that a statute reducing sentences for marijuana possession "operated as a legislative impairment of existing final legal judgments," while also noting "there is no power of pardon or commutation in the legislature and... the power is specifically and singularly granted to the executive branch");
 
 State ex rel. Smith v. Blackwell
 
 ,
 
 500 S.W.2d 97
 
 , 103 (Tex. Crim. App. 1973) (holding that a statute reducing the sentences for marijuana offenses resulted in "commutation" and, therefore, violated the Texas Constitution, which "plac[ed] the power of clemency in the hands of the Governor, acting upon the recommendation of the Board of Pardons and Paroles.");
 
 People v. Herrera
 
 ,
 
 183 Colo. 155
 
 ,
 
 516 P.2d 626
 
 , 628 (1973) (holding that "[t]he power of commutation ... is the power to reduce punishment from a greater to a lesser sentence," and this power was exclusive to the governor);
 
 Whittington v. Stevens
 
 ,
 
 221 Miss. 598
 
 ,
 
 73 So.2d 137
 
 , 140 (1954) (holding that, although "the legislature was prompted by the highest humanitarian motives," statute providing for reduction of sentence based on physical disability of prisoners was "held to be unconstitutional as an infringement upon the pardoning power vested in the governor.").
 

 See
 
 La. Const. art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.");
 
 see also
 
 La. Const. art. IV, § 5 (E)(1) ("The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, [and] pardon those convicted of offenses against the state ....").
 

 It should also be noted that sentences that were for a lawful duration when imposed, such as the relator's sentences, are not illegal sentences:
 

 This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer.
 
 State v. Wright
 
 ,
 
 384 So.2d 399
 
 , 401 (La. 1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense.
 
 State v. Narcisse
 
 ,
 
 426 So.2d 118
 
 , 130-131 (La.1983).
 

 State v. Sugasti
 
 , 01-3407, p. 4 (La. 6/21/02),
 
 820 So.2d 518
 
 , 520.
 

 Here, by derogating from these previously-recognized principles, the majority opinion profoundly alters and expands the concept of illegal sentences for purposes of La. C.Cr.P. art. 881.5.
 

 Parenthetically, I note that the role of Louisiana's committee on parole differs from the role of California's Community Release Board, as the latter's role is described in
 
 Way v. Superior Court
 
 ,
 
 74 Cal. App. 3d 165
 
 ,
 
 141 Cal.Rptr. 383
 
 (Ct. App. 1977). For justification in overruling this court's decision in
 
 Dick
 
 , the majority relies heavily on
 
 Way
 
 . However, as described in
 
 Way
 
 , newly enacted legislation required, as the default ruling of the Community Release Board, to set a release date consistent with more recently enacted and lesser periods of incarceration.
 
 Way
 
 , 74 Cal. App.3d at 171-72,
 
 141 Cal.Rptr. 383
 
 . Only if "two members of the Community Release Board ... determine that ... [he] should serve a [longer] term" would an offender be required to serve a longer term.
 

 Id
 

 . at 172-73,
 
 141 Cal.Rptr. 383
 
 , 391. Thus, the procedure envisioned by the Louisiana Legislature provides no default ruling by the committee on parole and hence empowers the committee with greater discretion.
 

 See generally
 

 Louisiana could soon lose title as incarceration capital, with or without reforms
 
 , The Advocate (May 23, 2017), available at http://www.theadvocate.com/baton_rouge/news/politics/legislature/article_c79ad504-3f23-11e7ac58-fb249f8e45fe.html.